IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : CRIMINAL ACTION
:
v. :
:
WILLIAM JONES : NO. 10-400

**MEMORANDUM**

**Padova, J.** May 11, 2011

Defendant William Jones has been charged with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Currently before the Court is Defendant's Motion to Suppress physical evidence recovered during a November 20, 2009 search of 526 N. 59th Street in Philadelphia, including the Intratec, Model AB-10, 9mm Luger semiautomatic pistol, bearing an obliterated serial number (the "Tec-9"), and the extended large capacity magazine, loaded with 21 live rounds of ammunition (the "extended clip"), that Philadelphia police officers seized from the second-floor bedroom closet. We held a Hearing on the Motion on April 12, 2011. For the reasons that follow, the Motion is granted.

**I. BACKGROUND**

Defendant has moved to suppress the evidence seized on November 20, 2009, asserting that the affidavit of probable cause submitted in connection with the application for the search warrant for 526 N. 59th Street (the "affidavit") did not establish probable cause. The affidavit states, in its entirety, as follows:

> On Friday, 11/20/09 at or about 12:01 PM, 16th District police responded to a radio call "Meet a complainant, 3900 Brown Street." On arrival, police met with a complainant who is known to the Affiant and will be available for Court proceedings. He told the police that there were two occupants in his vehicle which was parked nearby. He stated that one of the occupants was William Jones who he has known for 8 to 9 years and he knows Jones to sell drugs to earn money. He stated that the other occupant was only known to

him as "Gunplay" and that he has known "Gunplay" since October and has been in his company six or seven times. He told the officers that William Jones had told him that he had killed someone on 52nd Street. While driving through 52nd Street between Greenway and Kingsessing Avenue he pointed to the location at which he had killed someone by shooting him. The officers contacted the Homicide Unit and it was learned that Christian White had been shot and killed on 4/30/09 (M09-92, DC#09-12-037860) at that location. The witness further stated to police that he was with William Jones when Jones obtained a Tech 9 handgun. He stated that he saw the gun last approximately 2 to 3 weeks ago and that Jones kept the gun in his room. He stated that Jones rents a room from his grandmother, and that he occupies the 2nd floor middle bedroom. This witness then led Detectives to the residence that Jones occupies and it was found to be 526 N. 59th Street, Philadelphia, Pennsylvania. William Jones and Michael Williams were found to be in the witness's vehicle and they were transported to homicide for further investigation.

This Search Warrant is for the recovery of any weapons, handguns, ammunition, firearms of any type, proof of residence, photographs, and any other items of evidentiary value including any illicit narcotic drugs and paraphernalia.

The AFFIANT is respectfully requesting a Search Warrant for the residence 526 N. 59th Street so that it can be searched for any and all evidence that will assist further in this investigation.

(Warrant at 2.) The warrant states that it issued in connection with a "violation of the Uniform Firearms Act." (Id. at 1.) The warrant describes the items to be seized as follows: "any and all ballistics[,] guns, ammo, magazines, proof of ownership, and any and all evidence that will assist further in this investigation including any and all illegal narcotic drugs, and drug paraphenalia [sic]." (Id.) At 7:30 p.m. on November 20, 2009, officers executed the warrant, and seized the Tec-9 and the extended clip from the second-floor bedroom closet of 526 N. 59th Street, as well as documents and photographs linking Defendant to the residence. Officers did not find any drugs or drug paraphernalia.

2

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The home, in particular, "is sacrosanct, and unreasonable government intrusion into the home is 'the chief evil against which the wording of the Fourth Amendment is directed.'" United States v. Zimmerman, 277 F.3d 426, 431 (3d Cir. 2002) (quoting Payton v. New York, 445 U.S. 573, 585 (1980)). "Ordinarily, 'for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause.'" United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010) (quoting United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002)). A magistrate may find probable cause for the issuance of a search warrant if, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

The magistrate's determination that probable cause existed is to be "paid great deference." Id. at 236 (quotation omitted). Accordingly, "[a] reviewing court must determine only that the magistrate had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (quoting Gates, 462 U.S. at 238). In making this determination, the reviewing court may consider only "'the facts that were before the magistrate, i.e., the affidavit, and [may] not consider information from other portions of the record.'" United States v. Miknevich, — F.3d —, 2011 WL 692973, at *2 (3d Cir. 2011) (quoting United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993)). The affidavit "must be read in its entirety and in a common sense and nontechnical manner." United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (citing United States v. Conley, 4 F.3d 1200, 1206 (3d Cir. 1993)). Meanwhile, "'the resolution of doubtful or marginal cases . . . should be largely determined by the

preference to be accorded to warrants.'" Miknevich, 2011 WL 692973 at *2 (quoting Jones, 994 F.2d at 1055, 1057-58). This, however, "'does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.'" Id. (quoting United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983)). The defendant bears the burden of establishing that his Fourth Amendment rights were violated. United States v. Acosta, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citation omitted).

Even if the magistrate lacked a substantial basis for the issuance of a search warrant, the Court ordinarily should not suppress evidence seized pursuant to that warrant "when an officer acting with objective good faith has obtained [the] search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984) (footnote omitted); see also United States v. Stearn, 597 F.3d 540, 560 (3d Cir. 2010) (citing Leon, 468 U.S. at 926). Typically, "[t]he mere existence of a warrant . . . suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." United States v. Hodge, 246 F.3d 301, 307-08 (3d Cir. 2001) (citations omitted). There are four circumstances, however, in which the good faith exception is not applied:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

Stearn, 597 F.3d at 561 n.19 (internal quotations and citations omitted). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting Leon, 468 U.S. at 922 n.23). The Government bears the burden of

establishing that the good faith exception applies. Leon, 468 U.S. at 924.

## III.    DISCUSSION

Defendant has moved to suppress the physical evidence seized during the November 20, 2009 526 N. 59th Street on the grounds that the affidavit did not establish probable cause for the warrant and that the affidavit was so lacking in indicia of probable cause that a reasonably well-trained police officer would have known that it was insufficient. The Government argues that the affidavit did establish probable cause and that, even if the affidavit was insufficient, we should not suppress the physical evidence seized pursuant to the warrant because the officers who prepared and executed the warrant did so in good faith.

### A.    Probable Cause

Defendant argues that the affidavit did not establish probable cause to believe that evidence of a violation of the Pennsylvania Uniform Firearms Act ("UFA") would be found in his residence because the affidavit failed to establish that Defendant's possession of the Tec-9 referred to in the affidavit was illegal under the UFA. The UFA prohibits, among other things, carrying a firearm in a vehicle or on one's person outside one's home without a license, 18 Pa. Cons. Stat. § 6106; carrying a firearm on the public streets or public property in cities of the first class without a license, 18 Pa. Cons. Stat. § 6108; and possession of a firearm by those convicted of certain felonies, 18 Pa. Cons. Stat. § 6105. However, the affidavit does not indicate that Defendant was unlicensed, that he possessed the gun outside his home, or that he was a convicted felon. Accordingly, the affidavit did not provide a substantial basis for the magistrate to conclude that probable cause existed with respect to a violation of the UFA. See United States v. Jones, 388 F. App'x 175, 177 (3d Cir. 2010) (agreeing with a District Court's conclusion that an affidavit failed to establish probable cause for

5

a search seeking evidence of a violation of 18 Pa. Cons. Stat. § 6105 where the affiant failed "to elaborate on the basis of the felony conviction" (quotation omitted)).

Following the April 12 Hearing, the Government conceded that the affidavit failed to establish probable cause for a firearms violation. (Gov't Supplemental Resp. at 6.) Despite this concession, the Government denies that the warrant is wholly lacking in probable cause. Instead, the Government now argues that the affidavit "established probable cause to search the defendant's residence for drugs."[1] (Id.) The Government's new interpretation of the warrant is inconsistent with a common sense, nontechnical reading of the warrant. See United States v. Johnson, 690 F.2d 60, 64 (3d Cir. 1982) ("[P]hrases in a search warrant must be read in context and not in isolation. . . . [A] warrant must be read as a whole." (citation omitted)). The warrant states that the criminal violation at issue was a violation of the UFA. As a general matter, the violation listed on the face of a warrant may limit the warrant's scope. See United States v. Tracey, 597 F.3d 140, 152 n.10 (3d Cir. 2010) ("[T]he description [of items to be seized] . . . is limited by the language indicating that the officers were seeking permission to search for and seize evidence of violations of a specific statute's subsections."); see also Andresen v. Maryland, 427 U.S. 463, 480-81 & n.10 (1976) (interpreting a warrant that authorized police to search for and seize a series of specific documents as well as "books, records, documents, papers, memoranda, and correspondence, showing or tending to show a fraudulent intent, and/or knowledge as elements of the crime of false pretenses . . . together with other fruits, instrumentalities and evidence of crime at this time unknown" and concluding that it was "clear from the context that the term 'crime'" referred "only to the crime of false pretenses").

---

[1] We note that the Government has never taken the position that the affidavit established probable cause to search Defendant's residence for evidence relating to the murder at 52nd and Greenaway Streets. (See 4/12/11 Hr'g Tr. at 35.)

6

The Government's new interpretation of the warrant is also inconsistent with a common sense reading of the affidavit. See Johnson, 690 F.2d at 64 ("When a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be used in construing the scope of the warrant." (citations omitted)).[2] Aside from a single bald assertion that Bowler "knows Jones to sell drugs to earn money," all of the factual allegations of the affidavit concern Jones's possession and use of firearms. The affidavit does not specify what drugs Bowler knew Jones to sell, provide any time frame for the drug dealing that Bowler mentioned, set out the basis for Bowler's knowledge, report any police corroboration of Bowler's assertion that Jones was a drug dealer, or connect the drug dealing in any way with Jones's residence, which belonged to his grandmother.[3]

The Government's new interpretation of the warrant is also inconsistent with the understandings of the police officers involved in the preparation and execution of the warrant.

---

[2] The warrant directs the reader to "see attached affidavit of probable cause." (Warrant at 1.)

[3] Even if we accepted the Government's position that the warrant authorized officers to search for and seize evidence of drug dealing in Defendant's grandmother's house, we would conclude that the affidavit failed to establish probable cause for such a search and seizure. "The age of the information supporting a warrant application is a factor that must be considered in determining probable cause." United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (citation omitted). Here, Bowler provided no time frame for Jones's alleged drug dealing, and the affidavit contained no evidence to suggest that Defendant had engaged in drug dealing recently. See id. at 422 (emphasizing police surveillance indicating that the drug dealing referred to by the informant continued "until at least a few weeks before the search was conducted"). Indeed, the affidavit contained no corroboration of Bowler's assertion at all. See Stearn, 597 F.3d at 555 (3d Cir. 2010) (stating that "'[police] corroboration of details of an informant's tip' [is] an important method for establishing a tip's reliability" (citing Gates, 462 U.S. at 241)). Furthermore, in order to establish probable cause with respect to a drug violation, an affidavit must provide "evidence that . . . '[the] home contains contraband linking it to the dealer's drug activities.'" United States v. Davis, 383 F. App'x 172, 177 (3d Cir. 2010) (quoting United States v. Burton, 288 F.3d 91, 104 (3d Cir. 2002)). The affidavit provides no evidence that Defendant sold drugs out of his grandmother's house or that he used the house to store drugs or drug paraphernalia. The Government argues that the affidavit provides evidence that Defendant's residence contained the Tec-9, but the affidavit does not link the Tec-9 to Defendant's alleged drug dealing in any way.

7

During the April 12 Hearing, we asked Detective Watkins, the officer who prepared the warrant, to explain what he meant by the phrase "in this investigation" in the warrant's description of items to be seized. (4/12/11 Hr'g Tr. at 30.) He responded, "We were investigating at this time the gun inside of the house that could be a continuation from the murder." (Id.)

In sum, the Government's new interpretation of the warrant is inconsistent with the face of the warrant, the clear thrust of the affidavit, and the understandings of the officers involved in the preparation and execution of the warrant. We conclude that the warrant was intended solely to authorize officers to search for and seize evidence of a violation of the UFA. As we have determined that the affidavit did not establish that probable cause existed with respect to a violation of the UFA, we consider the Government's argument that the good faith exception applies.

    B.    Good Faith

"Before determining whether the good faith exception applies," the United States Court of Appeals for the Third Circuit encourages us to "reflect upon the purpose of the exclusionary rule[:]"

> The exclusionary rule is designed to deter police conduct that violates the constitutional rights of citizens. The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By excluding evidence seized as a result of an unconstitutional search and seizure, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Because the purpose of the exclusionary rule is to deter unlawful police conduct, the fruits of an unconstitutional search should be suppressed if, despite the magistrate's authorization, an objectively reasonable, well-trained officer would have known that the search violated the Fourth Amendment. Concomitantly, suppression should not be ordered where an officer, acting in objective good faith, has obtained a warrant without probable cause because in such cases only marginal deterrent purposes will be served which cannot justify the substantial costs of exclusion.

Zimmerman, 277 F.3d at 436 (quotations and citations omitted). "'[T]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all known facts.'" Id. at 438 (quoting United States v. Reilly, 76 F.3d 1271, 1273 (2nd Cir. 1996) (alteration in original)). The "objective standard 'requires officers to have a reasonable knowledge of what the law prohibits.'" Id. (quoting Leon, 468 U.S. at 919 n. 20). At the same time, we should "neither expect nor require . . . 'nonlawyers in the midst . . . of a criminal investigation'" to have conducted a "detailed analysis" of the relevant case law. Stearn, 597 F.3d at 563 (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)).

The Government argues that the good faith exception applies here because Detective Watkins' failure to include Defendant's status as a previously convicted felon in the affidavit was merely a mistake. However, if "the warrant and affidavit on their face preclude reasonable reliance, the reasoning of Leon does not apply." Zimmerman, 277 F.3d at 437 (quotation omitted). At best, the affidavit establishes that Jones might have, at one time, been involved in various types of criminal activity, including drug dealing and murder, and that he recently kept a Tec-9 in his bedroom. It would not take a detailed analysis of the relevant case law to understand that this affidavit is, on its face, insufficient to establish probable cause with respect to a violation of the UFA.

As we discussed previously, the Third Circuit determined in Jones that an affidavit failed to establish that probable cause existed with respect to a violation of the UFA where the affidavit failed to specify the defendant's prior felony. Jones, 388 F. App'x at 177. The affidavit in the Jones case stated that the defendant "was a convicted felon from New Jersey" and the police officer who executed the warrant based his conclusion that "the Defendant was not permitted to possess weapons

9

in accordance with 18 Pa. Cons. Stat. § 6105" on that statement. United States v. Jones, 572 F. Supp. 2d 601, 625 (W.D. Pa. 2008) (internal quotation marks omitted), aff'd, Jones, 388 F. App'x 175. While this statement in the Jones affidavit was insufficient "to present a substantial basis to establish probable cause (a deficiency that should have been observed by the magistrate as well as the reviewing assistant district attorney)" the district court concluded that it did not "reveal such an absence of indicia of probable cause that would cause [the police officer] some pause in executing the warrant." Id. In reviewing the district court's decision, the Third Circuit agreed that, because the Jones affidavit described the defendant as a felon, officers could rely on the warrant in good faith. Id. In this case, however, there was nothing in the warrant or affidavit upon which a police officer could base a conclusion that the Defendant was not permitted to possess a firearm in accordance with 18 Pa. Cons. Stat. § 6105. Indeed, Detective Watkins does not claim that he based his belief that Defendant violated § 6105 on anything contained in the warrant or the affidavit. His belief was based solely on his independent knowledge that the Defendant had a previous felony conviction. (4/12/11 Hr'g Tr. at 31.)

The good faith exception to the exclusionary rule applies only when "a reasonable mistake has been made in obtaining a warrant." Zimmerman, 277 F.3d at 436. The affidavit in this case reveals a complete absence of indicia of probable cause that Defendant violated § 6105. We conclude that the complete omission from the affidavit of any fact upon which a police office could base a belief that Defendant had violated § 6105 was not a reasonable mistake that would support application of the good faith exception.[4] We conclude that the affidavit in this case was so lacking

---

[4] We note two additional facts that support our conclusion that the good faith exception does not apply in this case. First, "[i]t bears mention that [the affiant] crafted the affidavit to portray [Defendant] in the worst possible light." See Zimmerman, 277 F.3d at 437. The affidavit attempts,

10

in indicia of probable cause with respect to a violation of the UFA that "'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999) (quoting Leon, 468 U.S. at 922 n.23).

## IV.   CONCLUSION

For the reasons set forth above, we conclude that the affidavit did not provide a substantial basis on which the magistrate could find probable cause to believe that evidence of a violation of the UFA would be found in Defendant's residence. We further conclude that the affidavit was so lacking in indicia of probable cause that a reasonably well-trained police officer, with a reasonable knowledge of what the law prohibits, would have known that the search was illegal despite the magistrate's authorization. Accordingly, we grant the Motion to Suppress the physical evidence

---

at some length, to implicate Defendant for a murder that the affidavit does not link in any way to the UFA violation at issue. Second, nothing in this case "suggest[s] that a hurried judgment had to be made to seek the warrant, excusing any reasonably mistake; indeed the police had complete control over the timing." See id. (internal quotation marks omitted).

recovered during the November 20, 2009 search of 526 N. 59th Street in Philadelphia.[5]

An appropriate Order follows.

BY THE COURT:


___S/ JOHN R. PADOVA_
John R. Padova, J.

---

[5]While the Motion to Suppress was pending, Defendant filed a Supplemental Motion to Suppress, in which Defendant argues that we should suppress the physical evidence seized during the November 20, 2009 search under Franks v. Delaware, 438 U.S. 154 (1978), because the affidavit omitted the fact that Bowler told police that Defendant purchased the Tec-9 described in the affidavit after the murder at 52nd and Greenaway Streets had taken place.  Defendant argues that, as written, the affidavit is misleading, in that it leads the reader to believe that the Tec-9 could have been the murder weapon.  Because we grant Defendant's Motion to Suppress the physical evidence seized during the November 20, 2009 search, we do not reach the Franks issue raised by Defendant in the Supplemental Motion to Suppress, and we therefore dismiss the Supplemental Motion as moot.